```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

AARON GAWLICK,

              Petitioner,

  -vs-

JAMES CONWAY

              Respondent.

**DECISION AND ORDER**
**No. 08-CV-6429T**

```
_____
```

## I. Introduction

*Pro se* petitioner Aaron Gawlick ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 8, 2003, in New York State, County Court, Monroe County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25 [1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

On September 10, 2002, Petitioner, Theresa Pape ("Pape"), Heather Rumble ("Rumble"), Richard Burdick ("Burdick"), and Adam McGill ("McGill") were at McGill's house in the Town of Byron, New York. The three men decided that they would all drive together in Pape's car to the City of Rochester to purchase cocaine. Petitioner brought a screwdriver with him for the purpose of fixing

a faulty break light on Pape's car. Trial Transcript [T.T.] 350-354, 368-369, 484.

Their quest for cocaine brought them to Jay Street in Rochester. There, they were flagged down by the victim and the victim's cousin, who were standing by the side of the road in front of a house at 493 Jay Street. Petitioner, who was driving Pape's car, pulled over and parked the car on the north side of Jay Street. Petitioner got out of the car and approached the two men. Petitioner asked the victim, in Spanish, if he had any cocaine. Petitioner then summoned Burdick, who exited Pape's car and joined him. As Petitioner and Burdick discussed a drug sale with the two men, a third man -- who, Petitioner testified, wore a red shirt and jean shorts -- came running up to them. The men wanted Petitioner to go behind a nearby house, but Burdick expressed his reluctance to do so and returned to Pape's car. T.T. 414-415, 487, 489, 490-492.

After Burdick returned to Pape's car, "a couple" of the men came over to Pape's car. One of the men put his hands in to the car and exhibited some drugs. The man informed Burdick and McGill that if they wanted to buy drugs, they had to go to a side alley. Burdick and McGill declined to do so. The men then walked away from the car. Thereafter, Petitioner began walking back toward Pape's car when someone called out to him. Petitioner testified that it was the victim who called out to him. Petitioner testified that he responded to this call, and walked to the back of Pape's

-2-

car to determine what the victim wanted. Petitioner testified that he and the victim engaged in a discussion whether Petitioner was going to purchase drugs. Petitioner testified that during the discussion, the victim had his back to the car and the Petitioner was facing him. While having their discussion, Petitioner testified that the two other men approached him, one riding a bicycle and the other (the man in the red shirt and jean shorts) approached from behind on foot. Petitioner testified that he then saw the victim "flinch" and he reacted and swung the screwdriver, which he removed from his pocket, and struck the victim in his throat. The victim later died from the stab wound inflicted to his throat. T.T. 372-374, 497-499.

After the encounter, Petitioner ran back to Pape's car and told the others that he had just punched the victim in his face. There was blood on the screwdriver and on Petitioner's hands. Burdick removed the screwdriver from Petitioner's lap as they drove from the scene and threw it out of the car window. A sock, which Petitioner used to wipe the blood from his hand, was also thrown from the car window. After the group returned to McGill's home, Petitioner explained, in detail, to Burdick and McGill how he had stabbed the victim in the throat with the screwdriver. T.T. 359-360, 416, 419-420.

At the end of September 2002, Petitioner spoke to a longtime friend, Mandy Chase ("Chase"), regarding the incident. Chase testified that Petitioner told her that he saw "a Puerto Rican kid"

-3-

(the victim) standing by the car talking to Burdick. She further testified that Petitioner told her that it looked like the individual and Burdick were arguing, so he ran over and "stuck him in the throat with a screwdriver." Chase testified that, in the course of recounting the events of September 10, 2002, Petitioner did not mention observing any weapons. T.T. 473.

Petitioner was indicted by a Monroe County Grand Jury and charged with two counts of murder in the second degree (intentional murder and depraved indifference murder). See Ind. No. 00668 (Resp't Ex. B at 7).

From July 21 to July 24, 2003, a jury trial was held before the Hon. Frank P. Geraci, Jr. Petitioner testified in his own defense.

Burdick, Pape, and Rumble testified for the prosecution, and each recounted the events of September 10, 2002 as he/she recalled them. Vanessaly Bermudez ("Bermudez"), a friend of the victim who lived at 493 Jay Street and witnessed the incident, also testified for the prosecution. Notably, Burdick testified that he did not remember seeing anyone wearing a red shirt or riding a bicycle at the scene of the crime. Pape also testified that she did not recall seeing anyone on a bicycle. Burdick and Bermudez testified that they did not see anyone between Defendant and Pape's car at the time Petitioner struck the victim in the throat with the screwdriver. Not a single witness testified that he/she observed

the victim or anyone else with a weapon. T.T. 290-291, 328-330, 358, 374, 414, 425.

At the close of the trial, Petitioner was found guilty of one count of second degree murder (intentional murder). He was subsequently sentenced as a second felony offender to a term of twenty years to life imprisonment. Sentencing Mins. [S.M.] 3, 22.

On or about December 9, 2004, while Petitioner's direct appeal was pending, Petitioner filed a motion to vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. Law ("C.P.L.") § 440, alleging that his trial counsel was ineffective because counsel failed to inquire into Petitioner's state of mind during the incident. See Pet'r Motion to Vacate the Judgment of Conviction dated 12/09/04 (Resp't Ex. J). That motion was denied by the Monroe County Court on March 24, 2005, pursuant to C.P.L. § 440.10(2)(b), because Petitioner's direct appeal was pending at the time. See Decision & Order of the Monroe County Court (Hon. Frank P. Geraci, Jr.), Ind. No. 2002-0668, dated 03/24/05 (Resp't Ex. L). Leave to appeal was denied by the Appellate Division, Fourth Department on September 30, 2005. See Decision of the Appellate Division, Fourth Department (Hon. Leo F. Hayes), dated 09/30/05 (Resp't Ex. M).

Petitioner's judgment of conviction was affirmed by the Appellate Division, Fourth Department on September 22, 2006. People v. Gawlick, 32 A.D.3d 1207 (4th Dep't. 2006) (Resp't Ex. E); lv. denied, 8 N.Y.3d 845 (2007) (Resp't Ex. I).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court erred in denying his request to instruct the jury as to the defense of justification (self-defense); and (2) ineffective assistance of trial counsel. See Pet. ¶ 22A-B (Dkt. #1).

**III. General Principles Applicable to Habeas Review**

A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant

state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

### 1. That the Trial Court Erred in Denying Petitioner's Request to Instruct the Jury on the Defense of Justification

Petitioner argues that the trial court erred in denying his request to instruct the jury on the defense of justification, pursuant to Penal Law § 35.15. See Pet. ¶ 22A. The Appellate Division, Fourth Department rejected this claim on the merits on direct appeal, finding that "[a] trial court need not charge justification where no reasonable view of the evidence supports the

-8-

elements of the defense." Gawlik, 32 A.D.3d at 1207 (internal quotations and citations omitted).

To obtain a writ of habeas corpus "on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show . . . that the error violated a right guaranteed to him by federal law." Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (quoting Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985)); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (noting that a petitioner must show "not merely that the instruction is undesirable, erroneous, or even universally condemned," but that it violated due process) (internal quotation marks omitted)). In accordance with this principle, it is settled law in the Second Circuit that a habeas writ sought on the ground of a state trial court's refusal to provide a jury instruction may issue only when three requirements are satisfied: (1) petitioner must demonstrate that he was "erroneously deprived of a jury instruction to which he was entitled under state law," Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001); (2) the omission of the instruction must have "so infected the entire trial that the resulting conviction violates due process," id. at 131 (quoting Cupp, 414 U.S. at 147); and (3) the trial court's refusal to instruct, and/or the appellate court's affirmance of the conviction, must constitute objectively unreasonable applications of the Supreme Court's rulings on due process. Id. at 124. Since this Court finds that Petitioner was not entitled to a jury

instruction on justification under New York law and that the trial court's denial of Petitioner's request to give the charge was not erroneous, it is unnecessary for the Court to reach the second and third prongs of the Davis test. See Davis, 270 F.3d at 123.

As to the first prong, New York Penal Law § 35.15(1) establishes that "[a] person may . . . use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person." Additionally, the statute specifies that an individual's use of deadly physical force against another person is justifiable only when he reasonably believes that the "other person is using or about to use deadly physical force." Penal Law § 35.15(2)(a). Thus, to establish the defense of justification under New York law, a defendant who used deadly physical force on someone "must show both that he subjectively believed that deadly force was necessary under the circumstances and that a reasonable person in his situation would have held this belief." Blazic, 900 F.2d at 540 (citing People v. Goetz, 68 N.Y.2d 96, 115 (1986)). Further, "[e]ven if a defendant reasonably believed that deadly force was necessary, his actions were not justified if he knew that he could, with complete safety, avoid using deadly force by retreating." Id. (citing Penal Law § 35.15(2)(a)).

In New York, when evidence relating to the defense of justification is presented by a defendant, "the [trial] court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute [the] defense." Penal Law § 35.05. "[I]f the record includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his favor, satisfies the essential elements of the defense of justification, the [justification] charge must be given" to the jury. Davis, 270 F.3d at 125. On the other hand, "a court need not charge justification if no reasonable view of the evidence establishes the elements of the defense." People v. Reynoso, 73 N.Y.2d 816, 818 (1988). The applicable law is clear that "a court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted." Blazic, 900 F.2d at 540 (citation omitted).

In the instant case, the trial court properly declined to charge justification to the jury based on its conclusion that no reasonable view of the evidence established the elements of the defense. T.T. 528-533. The prosecution's witnesses at trial –– several of whom were Petitioner's friends –– all testified that they did not observe the victim, or anyone else in possession of a weapon. T.T. 290-291, 323, 328, 358, 374, 414. In particular, Chase testified that, with regard to the events of September 10, 2002, Petitioner told her that "he looked back and there was a Puerto Rican kid standing by the car talking to Rick. He said it

-11-

looked like they were arguing, so he ran over and stuck [the victim] in the throat with a screwdriver." T.T. 473. The only evidence in support of the justification defense was from Petitioner who testified that he saw the victim, at one point, "flinch." T.T. 498. He testified further that, when he saw the victim "flinch," he was referring to a movement of the left side of the victim's hand. T.T. 499.

On direct appeal, Petitioner argued that the trial court erred in denying his request for a justification charge. See Appellant's Br. on Appeal, Point I (Resp't Ex. A). In its affirmance of Petitioner's conviction, the Fourth Department upheld the trial court's finding that a justification charge was unwarranted because no reasonable view of the evidence supported the defense. See Gawlik, 32 A.D.3d 1207.

As the state trial and appellate courts correctly found, the justification charge was not warranted in Petitioner's case because there was no reasonable basis in the evidence adduced at trial for the jury to conclude that the elements of the defense had been established. There is no indication in the record that Petitioner actually believed that it was necessary for him to use deadly physical force under the circumstances. See People v. Watts, 57 N.Y.2d 299, 302 (1982) (no justification charge required because there was no basis for determining whether defendant perceived an imminent threat of deadly physical force). The only basis upon which the jury could have concluded that Petitioner subjectively

believed that he needed to use deadly force to protect himself against the victim, or to repel an attack from the victim or the victim's companions, would have been by speculation. "A justification instruction is obviously not required if a jury would have to speculate to find that the defense is valid." DeLeon v. Lempke, No. 09-cv-2310, 2009 U.S. Dist. LEXIS 112642 (E.D.N.Y. Dec. 2, 2009).

Further, "even if [Petitioner] had actually believed that he had been threatened with the imminent use of deadly physical force[,] . . . the jury could not rationally conclude that his reactions were those of a reasonable man acting in self-defense." Reynoso, 73 N.Y.2d at 818 (internal quotation marks omitted). Petitioner testified that he saw the victim "flinch" immediately before he struck him in the throat with the screwdriver, which, he clarified, was in reference to a movement of the left side of the victim's hand. T.T. 499. However, Petitioner did not testify that he knew or had any basis to believe that the victim was armed, or that the victim was much less about to inflict deadly physical force upon him. And, finally, given the nature and extent of the wound inflicted upon the victim, Petitioner's actions under the circumstances plainly exceeded the bounds of what might reasonably be considered defensive action. See People v. Hall, 48 A.D.3d 1032, 1033 (4th Dep't. 2008) ("County Court properly denied the request of defendant for a justification charge inasmuch as there is no reasonable view of the evidence . . . to support a

-13-

justification defense.  Even assuming, arguendo, that defendant reasonably believed that the victim was using or was about to use deadly physical force against him, we conclude that there is no reasonable view of the evidence that defendant was unable to retreat with complete safety . . . ."); People v. Marzuq, 280 A.D.2d 974 (4th Dep't. 2001) (no justification charge required based on defendant's use of a dangerous instrument against an unarmed individual, which "cannot be viewed as anything other than an excessive use of force, thereby precluding the defense of justification") (internal citations and quotations omitted).

Consequently, Petitioner's prayer for habeas relief based on the trial court's refusal to charge the jury on the defense of justification is not supported by the record.  The claim is therefore dismissed.

## 2. Ineffective Assistance of Trial Counsel

Petitioner argues that he was deprived of his right to the effective assistance of trial counsel because "counsel erred in not eliciting sufficient testimony from Petitioner as to his state of mind of the alleged offense."  Pet. ¶ 22B.  On direct appeal, the Appellate Division, Fourth Department rejected this claim on the merits, finding that "defense counsel afforded [Petitioner] meaningful representation."  Gawlick, 32 A.D.3d at 1207.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must

show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

Petitioner argues that trial counsel provided ineffective assistance because counsel failed to elicit testimony from Petitioner that he felt threatened by the other men who were with the victim, and that he reasonably believed that one or more of

these men might have had a weapon.  See Pet. ¶ 22B, p 8.  This claim is meritless.

As discussed at Section "IV, 1", *supra*, the sole evidence in support of Petitioner's claim that he reasonably believed that the victim was about to use deadly force against him was introduced through Petitioner's own testimony.  In response to defense counsel's questioning, Petitioner testified that immediately before he struck the victim in the neck with the screwdriver, he saw the victim "flinch."  T.T. 498.  When asked by counsel to clarify what he meant by this, Petitioner indicated that he was referring to a movement of the left side of the victim's hand.  T.T. 499.

Petitioner suggests that counsel's line of questioning on this issue was inadequate insomuch as it was not probative of Petitioner's state of mind at the time of the incident.  See Pet. ¶ 22B, p 8.  As a result of his attorney's allegedly deficient questioning, Petitioner argues that his testimony on this issue "amounted to nothing more that an open court confession absent any relevant state of mind evidence."  Pet. ¶ 22B, p 8.  Given the facts and circumstances of this case, the Court finds Petitioner's argument unavailing.  The record reflects that the conditions surrounding the stabbing were established at trial, at length, by the testimony of numerous witnesses.  Notably, none of these witnesses offered any testimony that supports Petitioner's position that he reasonably believed that the victim was using or about to

use deadly physical force. Moreover, the Court is unable to discern, nor has Petitioner pointed to, any additional testimony trial counsel could have possibly elicited from Petitioner to establish that Petitioner reasonably believed that the use of deadly force was warranted. In essence, Petitioner is faulting counsel for failing to elicit testimony based on facts that simply do not exist. To this extent, Petitioner cannot show that his counsel's conduct was deficient within the meaning of Strickland.

Petitioner also has not made the requisite showing necessary to satisfy the prejudice prong of Strickland. Nonetheless, based on the strong evidence of Petitioner's guilt, this Court cannot find that there is a reasonable probability that the outcome of his trial would have been different absent counsel's failure to elicit additional state-of-mind testimony from him.

The trial court's determination of this issue, therefore, was neither contrary to nor an unreasonable application of settled Supreme Court law, and the claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                 S/Michael A. Telesca

                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

DATED:    November 3, 2010
           Rochester, New York